UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENRIQUE VASQUEZ,<br><br>  Petitioner,<br><br>  v.<br><br>WILLIAM MUNIZ,<br><br>  Respondent. | No. 2:16-cv-02861-WBS-AC<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a California state prisoner proceeding pro se with an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. This action proceeds on the petition filed on December 5, 2016, ECF No. 1, which presents one claim challenging petitioner's 2013 conviction and sentence for eighteen separate counts of lewd conduct, oral copulation or sexual penetration, and sexual intercourse with petitioner's step-daughter when she was between the ages of 6 and 12 years. Respondent filed an answer, ECF No. 10, and petitioner filed a traverse, ECF No. 14.

## BACKGROUND

### Trial and Jury Deliberations

The following statement of the case is taken from the unpublished opinion of the California Court of Appeal on direct review:[1]

---

[1] The undersigned has independently reviewed the trial record and confirms the accuracy of the state court's recitation of the evidence presented at trial and subsequent jury deliberations.

1

Defendant was charged with lewd conduct with a child under the age of 14 (Pen. Code, § 288, subd. (a) -- counts 1, 3, & 15),[2,3] forcible lewd conduct with a child under the age of 14 (§ 288, subd. (b)(1) -- counts 2, 4-5, 7-9, 12, & 17-20), oral copulation or sexual penetration with a child age 10 or younger (§ 288.7, subd. (b) -- counts 6, 10-11, & 13-14), and sexual intercourse with a child age 10 or younger (§ 288.7, subd. (a) -- count 16). Each count charged in the information was specifically alleged to have taken place at an enumerated location (defendant's car and different residences in the Rosemont neighborhood of Sacramento) and during an enumerated timeframe (spans of a year or years depending on the victim's age at the time of the alleged act). We discuss the underlying facts substantiating the charges only as necessary to address the issues raised in this appeal.

A jury was sworn in on April 4, 2013, and the trial was held on seven court days, including multiple days of testimony by the victim, her eyewitness younger sister, dueling expert witnesses, and several character witnesses. The testimony of the victim and her younger sister described the multiple alleged acts of molestation, with sometimes unclear references to the victim's age at the time of the act or where the act was committed. The victim's stepmother and forensic investigators also recounted the information they had obtained from the two minors in various conversations and interviews. Character witnesses called by the defendant (mostly defendant's adult children) provided confusing testimony regarding when defendant and the victim lived in the various enumerated residences. Thus, the jury was presented with a hodgepodge of evidence about where events occurred -- necessary factual findings based on the allegations of the information.

Prior to deliberations, the jury was instructed, in conformity with CALCRIM No. 3550: "it is your duty to talk with one another and to deliberate in the jury room. You should try to agree on a verdict, if you can. [¶] Each of you must decide the case for yourself but only after you have discussed the evidence with the other jurors. Do not hesitate to change your mind if you become convinced that you are wrong. Do not change your mind just because other jurors disagree with you."

Deliberations began on April 16, 2013. On the first day, the jury asked for clarification whether the victim testified or reported her eyewitness younger sister knocked on the door during one of the charged acts of child molestation. On the second morning of deliberations [April 17, 2013], the jury requested a readback of a forensic investigator's testimony regarding the sister's interruption of the act and about the use of a vibrator defendant provided to the victim. They also asked about the presence of the victim's other sister during the interrupted act. That day, the court reporter read back the testimony regarding all these questions.

---

[2] See Lodged Doc. No. 7, Volume I of the Clerk's Transcript ("CT") on Appeal at 104–114.

[3] Undesignated statutory references in the Court of Appeal's statement of the case are to the California Penal Code.

2

> The following afternoon [April 18, 2013], the third day of deliberations, the jury informed the court it was deadlocked as to all counts. The court released the jury for the day and ordered them to return the following day to continue deliberations, saying: "It was a long trial. There are a lot of counts. I'm not going to release you from this. You're going to continue deliberating. So nine o'clock tomorrow morning, and we'll see you tomorrow." After the jury left the courtroom, defense counsel expressed a concern that since the court did not specify the jury was not going to be released "at that time," the jurors would be left with the impression they must reach a verdict. The court dismissed counsel's concern as unfounded because it had previously explicitly instructed the jurors they have an option of not reaching a verdict.
>
> The jury continued deliberations the following day (the fourth day) [April 19, 2013] and asked for readback of testimony relating to the victim seeing defendant naked, the victim's head hitting the steering wheel while she orally copulated defendant in the car, the longest period of time she was touched inappropriately, the victim's recounting of two separate incidents, and her testimony about her mother's witnessing two separate molestation events. After the readback of this testimony the following day (the fifth day of deliberations) [April 22, 2013], the jury informed the court it was still unable to render a unanimous verdict.
>
> After conferring with counsel in chambers, the court noted (outside the presence of the jury) the jury had "been working hard on this and [had] deliberated pretty close to five days." The jury's questions did not indicate any legal issues but seemed to indicate questions of credibility of the victim and her sister. Upon questioning, the foreperson informed the court he believed the jury was hopelessly deadlocked and further deliberations would not help, nor would different or additional instruction, readback, or deliberation tactics. The jury had voted as to all counts and as to each individual count three times.

Lodged Doc. 4 at 2–4.

With regard to the number of votes, the court asked the jury foreperson how many ballots had been taken, specifically directing the jury foreperson: "Don't tell me at all how anybody voted or what the votes were, what the splits were." RT 879.[4] The court then polled the jury on the possibility of reaching a verdict and whether further deliberations would be useful. Eleven of the jurors believed further deliberations would not be helpful. One juror responded that he thought it was "possible that some -- with enough deliberation and maybe a different approach, there might be some changes. It's possible." RT 881. Based on this juror's response, the court

////

---

[4] "RT" refers to Reporter's Transcript on Appeal, Volume One.

3

gave the jury the following "firecracker" instruction in accordance with People v. Moore, 96 Cal. App. 4th 1105 (2002):[5]

> All right. I'm going to -- I appreciate, first of all, your respective views on this. And then I trust that you're -- it does sound like you're having collegial and respectful negotiations, discussions, I mean deliberations, and I appreciate that.
>
> I am going to give you one additional instruction right now. What I'm going to do right now, ladies and gentlemen, is have further instructions and directions to give you as to your deliberations in this case.
>
> It has been my experience on more than one occasion that a jury which initially reported it was unable to reach a verdict was ultimately able to arrive at verdicts on one or more of the counts before it. To assist you in your further deliberations, I'm going to further instruct you, as follows:
>
> Your goal as jurors should be to reach a fair and impartial verdict if you are able to do so based solely on the evidence presented and without regard for the consequences of your verdict, regardless of how long it takes to do so.
>
> It is your duty as jurors to carefully consider, weigh and evaluate all of the evidence presented at the trial, to discuss your views regarding the evidence and to listen to and consider the views of your fellow jurors.
>
> In the course of your further deliberations, you should not hesitate to reexamine your own views or to request your fellow jurors to reexamine theirs.
>
> You should not hesitate to change a view you once held if you are convinced it is wrong or to suggest other jurors change their views if you are convinced they are wrong.
>
> Fair and effective jury deliberations require a frank and forthright exchange of views.
>
> As I previously instructed you, each of you must decide the case for yourself, and you should do so only after a full and complete consideration of all of the evidence with your fellow jurors.
>
> It is your duty to -- your duty as jurors to deliberate with the goal of arriving at a verdict on the charge if you can do so without violence to your individual judgment.
>
> Both the People and the defendant are entitled to the individual judgment of each juror.

---

[5] On April 30, 2013, defense counsel memorialized petitioner's objection to the Moore instruction. RT 894–95.

4

As I previously instructed you, you have the absolute discretion to conduct your deliberations in any way you deem appropriate. May I suggest that since you have not been able to arrive at a verdict using the methods that you have chosen, that you consider changing the methods you have been following or at least temporarily -- at least temporarily do so and try new methods.

For example, you may wish to consider having different jurors lead the discussions for a period of time, or you may wish to experiment with reverse role playing by having those on one side of an issue present and argue the other side's position and vice versa. This might enable you to better understand the others' positions.

By suggesting you should consider changes in your methods of deliberations, I want to stress I am not dictating or instructing you as to how to conduct your deliberations. I merely find that you may find it productive to do whatever is necessary to ensure each juror has a full and fair opportunity to express his or her views, and consider and understand the views of the other jurors.

I also suggest you reread CALCRIM instruction 200 and CALCRIM instruction 3550. These instructions pertain to your duties as jurors and make recommendations on how you should deliberate.

The integrity of a trial requires that jurors at all times during their deliberations conduct themselves as required by the instructions.

CALCRIM instruction 200 defines the duties of a juror.

You must decide what the facts are. It is up to you exclusively to decide what happened based only on the evidence that has been presented to you at trial. You must follow the law as I explain it to you, even if you disagree with it. If you believe that the attorneys' comments on the law conflict with my instructions, you must follow my instructions.

CALCRIM 3550 defines the jury's duty to deliberate.

It is your duty to talk with one another and to deliberate in the jury room. You should try to agree on a verdict if you can. Each of you must decide the case for yourself but only after you have discussed the evidence with the other jurors. Do not hesitate to change your mind if you become convinced that you are wrong, but do not change your mind just because other jurors disagree.

CALCRIM 3550 has other suggestions for how jurors should approach their task. You should keep in mind the recommendations this instruction suggests when considering the additional instructions, comments and suggestions I have made in the instruction now presented to you.

I hope my comments and suggestions may be of some assistance to you. You are ordered to continue your deliberations at this time. If

5

|   |   |
|---|---|
| 1 | you have other questions, concerns, requests or any communications you desire to report to me, please put those in writing in the form my bailiff has provided you with; have them signed and dated by your foreperson, and then please notify the bailiff. |
| 2 | |
| 3 | |

RT 881–85.

The Court of Appeal accurately described what happened next:

> Defendant objected to the provision of the *Moore*, *supra*, 96 Cal.App.4th 1105 instruction as inappropriate given the length of time the jury had deliberated, the jury's two separate deadlock declarations, and only one juror indicated further deliberations would be helpful.[]
>
> On April 22, 2013, one of the jurors informed the court of pre-planned vacation travel for April 25 through 27, 2013, and on April 23, 2013, another juror fell, spraining both ankles. The court recessed the jury for the remainder of the day. On April 24, 2013, the court learned the injured juror would not be able to participate in deliberations. The court informed counsel of the altered circumstances, and proposed replacing the injured juror with an alternate, suspending deliberations at noon on April 25, 2013 to accommodate the travelling juror, and resuming deliberations the following Monday, April 29, 2013. There being no objection, on April 24, 2013, the court instructed the newly composed jury and ordered them to begin deliberations anew.
>
> On April 29, 2013, the newly-formed jury asked the court whether it had to conclude the acts charged in counts 19 and 20 had to take place at a specific charged location or if the events merely had to take place during the charged time period. The following morning, April 30, 2013, after conferring with counsel, the court responded that because the events were alleged to have taken place at that location at a specific time, the jury could only return a guilty verdict on those counts if the jury found the acts happened at that time and at that place. Less than an hour later, the jury informed the court it had reached verdicts. The jury found defendant guilty of counts 1 through 18, and not guilty of counts 19 and 20.

Lodged Doc. 4 at 6.

<u>STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA</u>

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

6

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons. Harrington v. Richter, 562 U.S. 86, 99 (2011). State court rejection of a federal claim will be presumed to have been on the merits absent any indication or state-law procedural principles to the contrary. Id. at 99 (citing Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 99.

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. Lockyer v. Andrade, 538 U.S. 63, 71–72 (2003). Only Supreme Court precedent may constitute "clearly established Federal law," but courts may look to circuit law "to ascertain whether . . . the particular point in issue is clearly established by Supreme Court precedent." Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013).

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407–08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 520–21 (2003).

Review under § 2254(d) is limited to the record that was before the state court. Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011). The question at this stage is whether the state court reasonably applied clearly established federal law to the facts before it. Id. In other words, the

focus of the § 2254(d) inquiry is "on what a state court knew and did." Id. at 1399. Where the state court's adjudication is set forth in a reasoned opinion, § 2254(d)(1) review is confined to "the state court's actual reasoning" and "actual analysis." Frantz v. Hazey, 533 F.3d 724, 738 (9th Cir. 2008) (en banc). A different rule applies where the state court rejects claims summarily, without a reasoned opinion. In Richter, supra, the Supreme Court held that when a state court denies a claim on the merits but without a reasoned opinion, the federal habeas court must determine what arguments or theories may have supported the state court's decision, and subject those arguments or theories to § 2254(d) scrutiny. Richter, 562 U.S. at 101.

## DISCUSSION

### I. Petitioner's Coercive Jury Instruction Claim

Petitioner's sole claim for relief is that the trial court erred by not declaring a mistrial, and violated petitioner's Sixth and Fourteenth Amendment rights by forcing the deadlocked jury to continue deliberating. ECF No. 1-1 at 16.

### II. The Clearly Established Federal Law

The constitutional guarantee of due process protects criminal defendants from coerced jury verdicts. Lowenfield v. Phelps, 484 U.S. 231, 241 (1988). Instructions that encourage dissenting jurors to give weight to the views of the majority do not have such inherently coercive effect that they necessarily violate the due process right to a fair and impartial jury. Id. at 237. Rather, the existence of coercion must be determined on a case by case basis. Id. "A supplemental jury charge to encourage a deadlocked jury to try to reach a verdict is not coercive per se." Parker v. Small, 665 F.3d 1143, 1147 (9th Cir. 2011) (citing Allen v. United States, 164 U.S. 492 (1896); Lowenfield, 484 U.S. at 237). In assessing coercive effect, it is clearly established that the reviewing court must consider the challenged instruction "in its context and under all the circumstances." Jenkins v. United States, 380 U.S. 445, 446 (1965) (per curiam).

### III. The State Court's Ruling

This claim was raised on direct appeal. The California Court of Appeal decision, Lodged Doc. No. 4, constitutes the last reasoned decision on the merits because the state supreme court

////

denied discretionary review, Lodged Doc. 6. See Ylst v. Nunnemaker, 501 U.S. 797 (1991); Ortiz v. Yates, 704 F.3d 1026, 1034 (9th Cir. 2012).

The appellate court ruled as follows:

> Defendant contends the trial court prejudicially erred in requiring the jury to continue deliberating after it had declared a deadlock. Specifically, he contends the trial court's employment of the *Moore*, *supra*, 96 Cal.App.4th 1105 instruction was coercive in light of the trial court's earlier statement it would not release the jury after it first announced itself deadlocked. We disagree.
>
> [California Penal Code] Section 1140 provides that "the jury cannot be discharged after the cause is submitted to them until they have agreed upon their verdict and rendered it in open court, unless by consent of both parties, entered upon the minutes, or unless, at the expiration of such time as the court may deem proper, it satisfactorily appears that there is no reasonable probability that the jury can agree." "'The determination whether there is reasonable probability of agreement rests in the discretion of the trial court. [Citations.] The court must exercise its power, however, without coercion of the jury, so as to avoid displacing the jury's independent judgment "in favor of considerations of compromise and expediency." [Citation.]' [Citation.] The question of coercion is necessarily dependent on the facts and circumstances of each case. [Citation.]" (*People v. Sandoval* (1992) 4 Cal.4th 155, 195–196.)
>
> First, we reject defendant's assertion that the court's announcement it was "not going to release [the jury]" and its direction to the jury to "continue deliberating" after the jury announced it was deadlocked on the third day of deliberations caused the jury to believe it was required to reach a verdict. The jury spent a considerable amount of time in its continued deliberations listening to additional readback of testimony, and after two days of continued deliberations informed the court it still could not reach a verdict. Thus, it appears the continued deliberations enhanced the jurors' understanding of the case and the court's order to continue deliberating did not pressure the jury to reach a verdict based on " ' "matters already discussed and considered" ' " (*People v. Proctor* (1992) 4 Cal.4th 499, 539) or based on "considerations of compromise and expediency" (*People v. Carter* (1968) 68 Cal.2d 810, 817). Thus, contrary to defendant's assertion, it does not appear the jurors interpreted the court's direction that it was not going to release the jurors after its first pronouncement of deadlock as requiring the jury to reach a verdict.
>
> Next, we turn to the court's *Moore*, *supra*, 96 Cal.App.4th 1105 instruction following the jury's second deadlock pronouncement. Prior to providing that instruction, the court polled the jury to determine whether further deliberations would be fruitful, and one juror indicated there was still a possibility a verdict could be reached. While defendant is correct the jury had been deliberating for the better part of five days (less time spent in readback of

9

> testimony) by the time it pronounced itself deadlocked for a second time, this does not necessarily mean further deliberations would not help the jurors to enhance their understanding of the case. (See *People v. Proctor*, supra, 4 Cal.4th at p. 539.) The trial court could properly rely on a single juror's statement in determining there was a "reasonable probability" a verdict could be reached. (*People v. Carter*, supra, 68 Cal.2d at p. 815; see also *People v. Rodriguez* (1986) 42 Cal.3d 730, 774 [finding no coercion where the trial court instructed the jury to continue deliberating after four expressions of impasse and a note expressing the jury was " 'hopelessly deadlocked' "].)
>
> Here, we conclude the *Moore* instruction is an appropriate and proper reminder to the jurors of their duties; it is not coercive. (*Moore*, supra, 96 Cal.App.4th at p. 1121.) In employing the *Moore* instruction, the trial court did not direct the jury to reach a verdict by a designated time, or indeed to reach a verdict at all. It instructed the jury to continue deliberating and offered the jury possible approaches to employ in its further deliberations. The court's actions were not coercive, even in light of the court's previous order that the jury continue deliberations. The deliberations involved numerous counts, specific factual allegations concerning the multiple times and locations of acts, and confusing testimony and statements of the victim, her younger sister, and the character witnesses that provided the evidence related to those factual allegations. The jury's repeated requests for clarification and readback of testimony support the difficulty of the factual allegations during deliberations. Based on the record, we conclude the trial court did not err in directing the jury to continue deliberations after it announced itself deadlocked.

Lodged Doc. 4.

IV. Objective Reasonableness Under § 2254(d)

When an <u>Allen</u>-style charge"[6] is challenged in post-conviction proceedings, factors relevant to the necessary coercion analysis include (1) the form of the instruction, (2) the amount of time of deliberation following the charge, (3) the total time of deliberation, and (4) other indicia of coerciveness. <u>Weaver v. Thompson</u>, 197 F.3d 359, 366 (9th Cir. 1999). The California Court of Appeal properly evaluated the challenged instruction in its context and reasonably concluded that the effect was not coercive.

////

---

[6] The trial court's jury instruction was based on an instruction upheld in <u>Moore</u>, 96 Cal. App. 4th at 1118–22. An instruction under <u>Moore</u> "is comparable to the <u>Allen</u> charge sometimes given during deliberations in federal proceedings." <u>Bell v. Uribe</u>, 748 F.3d 857, 861 n.2 (9th Cir. 2014) (citing <u>Allen</u>, 164 U.S. 492).

Regarding the first factor, in accordance with state law, the trial court (1) informed the jurors that they had "the absolute discretion to conduct your deliberations in any way you deem appropriate;" (2) emphasized that it is the jury's duty to carefully consider, weigh, and evaluate the evidence; (3) informed the jurors that their "goal as jurors should be to reach a fair and impartial verdict if you are able to do so based solely on the evidence" and "without violence to your individual judgment;" (4) phrased the comments by the judge as suggestions; and (5) stressed that the trial judge was not "dictating or instructing you as to how to conduct your deliberations." See People v. Moore, 96 Cal. App. 4th at 1119. Nothing in this language could reasonably be interpreted as pressure to surrender a conscientious doubt as to guilt. The court made it clear to the jury that all matters of fact were for its determination, which is the "essential question" in assessing coerciveness. Navellier v. Sletten, 262 F.3d 923, 943 (9th Cir. 2001). The court also polled the jury on whether further deliberations would be helpful and made clear that the jury was not to reveal the nature or extent of its division. Lowenfield, 484 U.S. at 240 (explaining that an inquiry as to how the jury stood on the question of whether further deliberations might assist them was clearly independent of the question of the jury's numerical division, which "'serves no useful purpose'" (quoting Brasfield v. United States, 272 U.S. 448, 450 (1926))). Accordingly, none of the jurors had reason to believe that the instruction was directed at him or her specifically, or even that the instruction was aimed at jurors favoring one side or the other. United States v. Easter, 66 F.3d 1018, 1023 (9th Cir. 1995); United States v. Daas, 198 F.3d 1167, 1180 (9th Cir. 1999) ("There is no reason to believe the form of the instruction would have been perceived as coercive by jurors holding the minority view, particularly since the district court judge did not inquire as to the numerical division and thus did not know whether the majority was in favor of conviction or acquittal.").

As to the second and third factors, the instruction was given on the fifth day of deliberations and two days after the court first instructed the jury to continue deliberations. A verdict was returned five days after the "firecracker" instruction was given, and three days after an injured juror was replaced and the jury was told to begin deliberations anew. Both before and after the "firecracker" instruction, the jury made frequent requests for evidence and readback of

testimony. This record of deliberations is consistent with a jury that was conscientiously working as a body. See United States v. Berger, 473 F.3d 1080, 1093 (9th Cir. 2007) (noting that the fact that the jury was deliberating meant that "the judge did not make his remarks in an atmosphere where the jurors would have felt that unanimity was their only escape from the jury room"). See United States v. Lorenzo, 43 F.3d 1303, 1307 (9th Cir. 1995) (factors indicating Allen charge was not coercive included that jurors "asked the court to replay some testimony from the trial, and [the] court[] complied"); United States v. Ajiboye, 961 F.2d 892, 894 (9th Cir. 1992) ("[T]he jury asked for some of the trial testimony to be re-read before reaching its verdict-another pretty good indication that the Allen charge did not coerce the guilty verdicts.").

The Ninth Circuit has repeatedly found no coercion where the length of deliberations between instruction and verdict was significantly less than that in this case. See, e.g., United States v. Bonam, 772 F.2d 1449, 1450–51 (9th Cir. 1985) (per curiam) ("[T]he jury deliberated for an hour and one-half after the [Allen] instruction was given. This was not an immediate post-charge guilty verdict nor was the verdict rendered in such a short period of time as to raise a suspicion of coercion."); United States v. Beattie, 613 F.2d 762 (9th Cir. 1980) (finding no coercion when a verdict was reached three-and-a-half hours after instruction, noting "[w]e have in countless cases approved an Allen charge"), cert. denied, 446 U.S. 982 (1980); Lorenzo, 43 F.3d at 1307 & n.3 (finding no coercion when jury deliberated for five-and-a-half hours after the instruction); Daas, 198 F.3d at 1180 ("The total time the jury deliberated was between four-and-a-half and five hours, one hour of which followed the Allen charge. Because a significant portion of the deliberations took place after the Allen charge, the timing fails to suggest coercion."); compare Weaver, 197 F.3d at 366 (coercion found when jury returned with unanimous verdict five minutes after receiving Allen charge).

As to the fourth factor, other indicia also suggest a lack of coercion. Petitioner argues that the trial court erred when after three days of deliberations—and two days before its firecracker instruction—the court told the jurors that it was not going to release them and they would continue deliberating. Petitioner argues that this was "extremely coercive" and "forced" the jury to continue deliberating until they produced a verdict. ECF No. 25 at 28. The Court of Appeal

ruled that the court's announcement it was "not going to release [the jury]" and its direction to the jury to "continue deliberating" after the jury announced it was deadlocked on the third day of deliberations did not cause the jury to believe it was required to reach a verdict. The Court of Appeal explained that the jury spent a considerable amount of time in its continued deliberations listening to additional readback of testimony and it was not until two more days of deliberations that the jury informed the court it still could not reach a verdict. The Court of Appeal concluded that continued deliberations enhanced the jurors' understanding of the case and the court's order did not pressure the jury to return a verdict. This conclusion is not objectively unreasonable.

Further, the jurors did not convict petitioner on all counts. Rather, after further deliberation, they found petitioner not guilty as to counts 19 and 20. See Berger, 473 F.3d at 1094 (the fact that the jury remained deadlocked on some counts following the Allen charge "clearly tells us that the jury exercised 'their rational and independent review of the evidence' and did not succumb to the court's alleged coercion." (citations omitted)); United States v. Cuozzo, 962 F.2d 945, 952 (9th Cir. 1992) ("[T]he record does not reflect any other indicia of coerciveness which would lead us to conclude that the jury was pressured into returning its verdict [following the Allen charge]. To the contrary, the jury rendered selective verdicts in this case, thereby demonstrating their rational and independent review of the evidence." (footnote omitted)).

In sum, the form of the trial court's supplemental jury instruction was neutral and the circumstances do not compel a finding of coercive effect. Accordingly, the state court's analysis was not unreasonable and therefore may not be disturbed by this court. The Supreme Court and Ninth Circuit have held that AEDPA bars relief in situations that present a far stronger showing of coercion than is presented here. See Early v. Packer, 537 U.S. 3 (2002) (AEDPA precludes relief where holdout juror twice sought to be relieved and trial court required her to continue deliberating); Deweaver v. Runnels, 556 F.3d 995 (9th Cir. 2009), cert. denied, 130 S. Ct. 183 (2009) (AEDPA precludes relief where the trial court had singled out a holdout juror, inquired into the deliberative process, and given a 45-minute hypothetical that illustrated the permissible

////

inference of guilt from circumstantial evidence).  For these reasons, petitioner is not entitled to relief on this claim.

## CONCLUSION

For the reasons explained above, the state courts' denial of petitioner's claim was not objectively unreasonable within the meaning of 28 U.S.C. § 2254(d).  Even without reference to AEDPA standards, petitioner has not established any violation of his constitutional rights.  Accordingly, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues.  See 28 U.S.C. § 2253(c)(2).  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  July 9, 2019.

_/s/ Allison Claire_
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE